J-A21025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1078 EDA 2022 |

Appeal from the Order Entered March 24, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0000784-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1079 EDA 2022 |

Appeal from the Decree Entered March 24, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000721-2021

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 7, 2022**

Appellant, J.H. (Father), appeals from the decree terminating his parental rights to his daughter, D.H. a/k/a D.D.H. (Child).[1]  Upon review, we affirm.

---

[1] The trial court also terminated the parental rights of K.B. (Mother), who has not appealed.

Child has been in the care of the Philadelphia Department of Human Services (DHS) since her birth in July 2020. The trial court explained:

> On July 13, 2020, DHS received a General Protective Services (GPS) report alleging [Child] and Mother tested positive for fentanyl at [Child's] delivery; that Mother disclosed that she used fentanyl as well as heroin; that Mother gave birth at 32 weeks gestation and [Child] was in the Neonatal Intensive Care Unit (NICU) ….

Trial Court Opinion, 5/26/22, at 2 (record citation omitted).

DHS learned from staff at Temple University Hospital "that Father was escorted out of the hospital after he had left the hospital unit for hours, despite being asked not to because of COVID-19 restrictions, and when he returned, there was concern that he may have been bringing Mother illicit substances." *Id.* at 3. Mother was alert and oriented before Father arrived, but after his visits, it "took two nurses to rouse her." *Id.* On July 14, 2020, when Child was two days old, "DHS went to the home of Mother and Father. There was no answer and DHS left a letter at the home. [N]eighbors [indicated] DHS would never gain access to the home because it was a 'flop house' for people to use drugs." *Id.* at 4.

DHS also learned "Father had a history of using heroin and was receiving Medicated-Assisted Treatment (MAT) and prescribed buprenorphine." *Id.* at 6. On July 17, 2020, Father failed to submit to a drug screen as requested. *Id.* On July 27, 2020, DHS requested that Father submit to another drug

screen. *Id.* He agreed, but again failed "to submit to a drug screen as requested." *Id.* at 7.

In addition to his history of drug use, Father had "an extensive criminal history" of drug and theft-related convictions. Trial Court Opinion, 5/26/22, at 10 (record citation omitted).

On July 29, 2020, DHS obtained an order for protective custody for Child. That same day, Child was discharged from Temple University Hospital and placed in foster care. After a shelter care hearing on July 31, 2020, the court ordered Father to undergo an evaluation and attend one-hour, virtual visits with Child, four days a week. Thereafter, the court ordered

> objectives for Father … to attend his [Clinical Evaluation Unit, (CEU)] evaluation and comply with its recommendations; submit three random drug and alcohol screens that are negative for nonprescribed substances; follow through with his substance abuse treatment, as recommended; follow through with his behavioral health treatment, as recommended; complete a parenting education program; attend his [] evaluation and comply with its recommendations; attend all visits with Child as scheduled and arranged; and resolve his bench warrant.

*Id.* at 8 (record citation omitted).

Child was adjudicated dependent following a hearing on September 3, 2020. The court ordered Father's referral for "assessment and monitoring plus three random drug screens prior to the next court date"; Father was also referred to parenting classes and other reunification services, and the court ordered "supervised (in-person) visitation twice a week for 2 hours at the Agency." *Id.*

The trial court conducted permanency review hearings on March 11, 2021, and June 15, 2021. DHS retained legal custody of Child, who was placed in kinship foster care with maternal great aunt. *See* N.T., 3/24/21, at 20. On November 30, 2021, DHS petitioned to involuntarily terminate the parental rights of Father (and Mother). A permanency review hearing proceeded as scheduled on December 16, 2021. The court thereafter ordered:

> Father is not engaged in services and not employed. Father shall have weekly supervised visits at the Agency for 2 hours. Father to confirm visit 24 hours in advance. Father is referred to CEU for a full drug and alcohol screen, assessment and 3 randoms prior to next court date, when he avails himself. Father to obtain appropriate housing and cooperate with [Community Umbrella Agency (CUA)] for assessment when appropriate. Father to attend domestic violence and to attend parenting [*sic*].

Order, 12/16/21.

The trial court held the termination hearing on March 24, 2021. After hearing testimony from caseworker, Alexa Garcia, and Father, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). Father timely appealed.[2] Both Father and the trial court have complied with Pa.R.A.P. 1925.

Father presents three questions for our review:

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, J.H. pursuant to 23 Pa. C.S.A. sections 2511(a)(1) where [F]ather presented evidence

---

[2] As Father appealed at the dependency and termination dockets, we consolidated the appeals *sua sponte*. Order, 7/5/22.

- 4 -

that he substantially met his [Family Service Plan] goals and tried to perform his parental duties.

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather pursuant to 23 Pa.C.S.A. sections 2511(a)(2) where [F]ather presented evidence that he has remedied his situation by taking parenting classes and consistently visiting [C]hild.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, [J.H.] pursuant to 23 Pa.C.S.A. section 2511(b) where evidence was presented that [F]ather consistently visited a newborn baby for the life of the case.

Father's Brief at 7.

In considering Father's issues,

our standard of review requires [us to] accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Supreme Court] discussed in *In re: R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by

- 5 -

the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

DHS has the burden to prove by clear and convincing evidence that its asserted grounds for termination were valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* Under 23 Pa.C.S.A. § 2511, "the court must engage in a bifurcated process prior to terminating parental rights." *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). Initially, the focus is on the conduct of the parent pursuant to § 2511(a). *Id.*

### *Section 2511(a)*

With respect to grounds for termination under Section 2511(a), we need only agree "as to any one subsection in order to affirm the termination of parental rights." *In re A.S.*, 11 A.3d 473, 478 (Pa. Super. 2010). Instantly, we address the second subsection, which provides for termination when

> repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Subsection 2511(a)(2) "emphasizes the child's present and future need for 'essential parental care, control or subsistence necessary for his physical or mental well-being.'" *In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (citation omitted). Grounds for termination under subsection (a)(2) are not limited to affirmative misconduct. *Id.* "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, h[is parental] rights may be forfeited." *Id.* at 83. The grounds for termination of parental rights under § 2511(a)(2) may include acts of refusal as well as incapacity to perform parental duties. *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (citation omitted). We have long recognized that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017).

Father asserts the trial court erred in finding grounds for termination because "the evidence presented at trial showed that [F]ather was working on his FSP goals." Father's Brief at 11. However, as DHS observes, Father did not "meaningfully comply" with his objectives, "including substance use, domestic violence, housing, and visitation, and concerns with Father's overall ability to parent." DHS Brief at 12. We agree with DHS, as the record reveals support for the trial court's findings.

Child was approximately 20 months old at the time of the March 24, 2021 termination hearing. The court heard from two witnesses: Alexa Garcia,

the case manager, testified for DHS; Father testified in opposition to termination.

Ms. Garcia explained that Child came into the care of DHS due to concerns with both parents' "substance use and housing issues." N.T., 3/24/21, at 10-11, 22. Ms. Garcia testified that Father's objectives were "substantially the same" throughout the case. *Id.* at 23. Father failed to complete at least 3 drug tests, as well as any evaluation or treatment for substance abuse. *Id.* at 24, 34, 36. Father also failed to complete a mental health evaluation. *Id.* at 39. Father completed a parenting class in December 2021. *Id.* at 25. As to housing, Father advised he was renting a room in a house, but had not provided a lease or other documentation. *Id.* at 26. Also at the time of the hearing, Father had an active criminal case as a result of domestic violence against Mother. *Id.* Although Ms. Garcia referred Father to counseling, Father "refused to do the domestic violence counseling" because "he wasn't found guilty yet, so he refused to do it." *Id.* at 27.

With respect to visiting Child, Father never progressed to unsupervised visits. *Id.* at 28. Ms. Garcia testified that during supervised visits, both parents "were drifting off. They were falling asleep at several different visits." *Id.* at 18. In addition, they would be late for visits. *Id.* at 19. Although Father attended 10 of 14 supervised visits, he was "kicked out of the most recent one" because he "was falling asleep [and] started cursing" at the supervisor. *Id.* at 28.

Ms. Garcia testified that Father failed to remedy the issues that caused Child to be in DHS's care, and "there is no parent/child bond." *Id.* at 29. She explained, "It's not a negative relationship, but [Child] wouldn't go to [F]ather to have her needs met." *Id.* at 29-30. Ms. Garcia testified to her opinion that termination would not cause Child irreparable harm and was in Child's best interest. *Id.* at 30-31. She further testified that Child was safe, medically "up to date," and "doing well" in her pre-adoptive, foster placement with maternal great aunt, where Child has "love, protection and support." *Id.* at 21, 31.

Father testified that Ms. Garcia's testimony regarding his failure to complete drug testing was "not true." *Id.* at 41. However, Father admitted he "couldn't go" and "did miss" drug testing, stating that he was "dealing with a medical issue" and missed testing "because of Covid at first." *Id.* at 41-42. Father testified that he did not complete an evaluation because he was advised by the provider that he already had one. *Id.* at 43-44. Father described his visits with Child as "good for the most part," although there was "an incident" with a supervisor. *Id.* at 45. Father testified, "I love my daughter." *Id.* at 46. He also stated that Child "knows I'm her dad." *Id.* Father testified he was "trying," but was "not getting any help." *Id.* at 47. He added, "financially right now, I could use some help." *Id.* at 49. Father testified he was unemployed, and the room he rents is "not at all" suitable for Child. *Id.* at

49, 51. Father conceded he was prescribed Suboxone, but testified he was not taking it. *Id.* at 54.

The trial court found "the testimony of Ms. Garcia … to be credible and clear and convincing," while it found Father's testimony to be "incredible and self-serving." Trial Court Opinion, 5/26/22, at 19. The court described Father's testimony, at "its basic core was untruthful." N.T., 3/24/22, at 57; *see also In re S.C.*, 247 A.3d at 1105 (The court at termination may reject as untimely or disingenuous a parent's vow regarding services where the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings.). Accordingly, the court concluded that Father's repeated and continued incapacity to parent caused Child to be without essential care, and the capacity would not be remedied. *See* 23 Pa.C.S.A. § 2511(a)(2). As the record and law supports the trial court's conclusion, we discern no error in the termination of Father's parental rights under Section 2511(a)(2).

### Section 2511(b)

Father also argues the trial court erred in termination his parental rights under Section 2511(b), which requires the trial court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Father asserts the trial court erred because Father "consistently visited [C]hild over the life of the case developing

a bond with [C]hild." Father's Brief at 12. Father's argument is not convincing.

"Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). When the trial court considers a child's needs and welfare, the "extent of any [parental] bond analysis ... necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. 2008).

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re A.S.*, 11 A.3d at 483 (citations omitted).

Ms. Garcia opined that termination was in Child's best interest and would not irreparably harm Child. N.T., 3/24/21, at 30-31. Ms. Garcia confirmed that Child is in pre-adoptive placement where Child has a "very good bond" with maternal great aunt and is "doing well." *Id.* at 20-21, 31. She further testified that Child's foster family meets Child's need for love and safety. *Id.* The trial court credited Ms. Garcia's testimony in determining "the child is in

a good placement," and "the best interest of the child" supports termination. *Id.* at 59.

Consistent with the foregoing, we discern no abuse of discretion by the trial court in terminating Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2022